Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3268 | **DATE** | 6/28/04 |
| **CASE TITLE** | Berryhill v. Village of Streamwood | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in open court, defendants' motion for summary judgment (34-1) is granted as to the claims against the Village of Streamwood but denied as to the claims against Daniel Spychalski. Plaintiff's motion to strike defendants' expert is granted (28-1). Jury trial of 1/4/05 is vacated, and reset to 9/13/04 at 9:45 a.m. Pretrial submissions as stated in open court due 8/27/04. Pretrial conference set to 9/8/04 at 4:00 p.m. Response to motions in limine due 9/3/04.

(11) ■ [For further detail see

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUL 6 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 45 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials OR | | 2004 JUL -2 AM 13:19 U.S. DISTRICT COURT  Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA BERRYHILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 02 C 3268 |
| | ) | |
| VILLAGE OF STREAMWOOD and | ) | |
| OFFICER DANIEL SPYCHALSKI, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On May 7, 2000, plaintiff Joshua Berryhill was shot by defendant Daniel Spychalski, an officer with the Streamwood Police Department, at a gas station in Streamwood. Berryhill has sued Spychalski and the Village of Streamwood under 42 U.S.C. § 1983, alleging that Spychalski used excessive force and that he did so pursuant to a policy or practice of the Village. The defendants have moved for summary judgment, and Berryhill has moved to strike a proposed expert witness offered by the defendants. For the reasons stated below, the Court grants summary judgment in favor of the Village but denies summary judgment as to the claim against Spychalski, and grants plaintiffs' motion to strike the proposed expert.

## Discussion

The two sides of this case present sharply different versions of the facts that unfolded on May 7, 2000. In the present context, the Court must avoid the temptation to decide which party's version is most likely true, as we are required to view the facts in the light most favorable to the

plaintiff and determine whether defendants are entitled to judgment as a matter of law. *See, e.g., Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); Fed. R. Civ. P. 56(c).

Viewed in the light most favorable to Berryhill, the facts are as follows. On the evening of May 7, 2000, Berryhill, who at the time was 25 years old, went to his father's house after drinking alcohol for several hours and picked up his father's handgun, determined to commit suicide. He drove to Thornton's Gas Station in Streamwood, arriving around 11:00 p.m. From a pay telephone outside the gas station, Berryhill called the Elmwood Park Police Department and asked to speak with Deputy Chief George Bertucci, the father of a childhood friend of Berryhill. Berryhill told the police dispatcher where he was, saying he had a gun and was going to kill himself. He repeatedly asked where Bertucci was and was told that Bertucci was on his way. At some point while on the telephone, Berryhill got frustrated, told the dispatcher he was not playing games, and fired a round into the ground next to the pay phone. He told the dispatcher the next shot would be at his head.

Bertucci was reached at home and drove to the gas station along with Elmwood Park Police Commander William Rollett. While Bertucci was en route, Berryhill was patched through to Bertucci's telephone, and he told Bertucci he had the gun to his head and was going to kill himself. Rollett contacted the Streamwood Police Department and advised that there was a man with a gun at the Thornton Gas Station.

After Bertucci and Rollett arrived in the area of the gas station, they observed Berryhill near the pay phone. He had a gun pointed to his temple and was walking around the gas station area. Bertucci tried to reason with Berryhill and they spoke for a period of time. He did not point his gun at Bertucci, Rollett, or any of the Streamwood police officers who were at the scene

at any time. The Streamwood officers who had been summoned to the scene remained concealed from Berryhill's view, and he says he was unaware of their presence.

At some point during the incident, Berryhill fired a shot into a berm in a direction away from Bertucci. Neither Bertucci nor the Streamwood officers who were on the scene took no action against Berryhill after this shot. About five to ten minutes later, Berryhill's gun discharged again. Taken in the light most favorable to Berryhill, the evidence reflects that he was facing away from Bertucci when the gun discharged. Berryhill testified that his arm brushed against his leg, and the gun discharged accidentally, in a southerly direction, away from Bertucci. The shot was in the general direction of a bank building and a condominium complex that were at some unspecified distance. Berryhill says he told Bertucci it was an accident.

A couple of seconds after Berryhill's gun discharged, Streamwood officer Spychalski shot Berryhill in the leg with his rifle, knocking him to the ground. Numerous officers rushed to where Berryhill was lying, jumped on top of him, stood on his leg where he had been shot, and handcuffed him. One of the officers had a police dog, who bit off a portion of Berryhill's ear. When paramedics arrived, they required the officers to remove the handcuffs.

Berryhill was ultimately charged with two counts of attempted first degree murder and two counts of aggravated discharge of a weapon. He was acquitted by Cook County Circuit Judge Thomas Fecarotta, Jr. on August 6, 2001 after a bench trial. At the trial, Bertucci testified that the shots were fired in a direction away from him and that he never feared for his own safety.

Spychalski, who was armed with a rifle, testified at his deposition that he could hear Berryhill telling Bertucci that he wanted to kill himself. Eventually Spychalski moved to a position that gave him a line of sight to Berryhill that was unobstructed by the gas pumps, as he

3

was concerned about causing an explosion if he had to shoot. He was told to stay out of sight. Spychalski claimed he saw Berryhill point his gun directly at the Elmwood Park officers and fire, and that when he saw this he shot Berryhill to protect the Elmwood Park officers. A jury might well accept Spychalski's version or at least his perception of the events. But because Spychalski's version is disputed – both Berryhill and Bertucci have testified that Berryhill never pointed his gun at the officers – the Court cannot rely on that version for purposes of the present motion for summary judgment.

A police officer's use of deadly force constitutes a "seizure" within the meaning of the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The reasonableness of the officer's use of force is evaluated by determining whether it was objectively reasonable in light of the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.*

The "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. An officer is entitled to use deadly force against a suspect if he has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others. *Garner*, 471 U.S. at 11.

As indicated earlier, for purposes of the present motion for summary judgment, the Court is required to view the facts in the light most favorable to Berryhill. Viewed through that lens, the situation confronting Spychalski was that of a suicidal man with a gun who did not threaten

4

anyone other than himself and who did not point or fire the gun at or in the direction of anyone, but did fire it once into a berm and once toward some buildings in the distance. A jury that found the facts as such could reasonably determine that a reasonable officer would not have found Berryhill to pose a threat to anyone other than himself and thus could reasonably find in Berryhill's favor. Defendants cite no cases that say deadly force may be used against a suspect merely because he is wielding a firearm, or merely because he has discharged the firearm so long as the discharge does not suggest that anyone is in danger. Rather, as indicated earlier, the law requires an objectively reasonable basis to believe that the suspect is posing a threat of serious physical harm to others. As we have indicated, a jury might well determine that a proper basis existed justifying Spychalski in shooting Berryhill, but given the limitations placed on the Court in the present context, Spychalski is not entitled to summary judgment.

Spychalski argues that even if summary judgment on the Fourth Amendment claim is inappropriate, he is nonetheless entitled to qualified immunity. Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from liability for civil damages if their conduct did not violate a clearly established right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The issue of qualified immunity is a question of law for the court, though it "entail[s] consideration of the factual allegations that make up the plaintiff's claim for relief." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985).

The qualified immunity inquiry requires the Court to ask first whether the facts, taken in

---

[1] In their reply, defendants suggest there was reasonable basis to believe that Berryhill posed a threat to occupants of the condominium complex, *see* Dfdts' Reply at 6 & 9, but there is no basis in the record to support this contention.

5

the light most favorable to the plaintiff, show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The answer to this question, as the Court has just discussed, is clearly yes. In his motion for summary judgment, Spychalski contends that he "fired to protect the lives of the two other police officers and because they were in danger of receiving great bodily harm, injuries, or death." Dfdts' Mem. at 10. But determination of the question of immunity based on Spychalski's version of the facts, which is contradicted by other evidence, would be contrary both to *Saucier* and Rule 56. Though we recognize that this aspect of the qualified immunity inquiry is distinct from the underlying question of whether Berryhill's Fourth Amendment rights were violated, *see Saucier*, 533 U.S. at 203 (citing *Anderson v. Creighton*, 475 U.S. 635, 643-44 (1987)), viewing the facts in the light most favorable to the plaintiff as we are required to do at this juncture, a reasonable jury could find that there was no reasonable or even arguable basis to shoot Berryhill.

The second aspect of the qualified immunity inquiry is whether the constitutional right in question was clearly established at the time of the alleged deprivation. *Saucier*, 533 U.S. at 201. Spychalski makes no argument in this regard, and thus the Court need not address the point.

For these reasons, the Court denies Spychalski's motion for summary judgment.

The Village of Streamwood also moves for summary judgment, arguing that Berryhill has offered no evidence that the alleged deprivation of his rights was caused by a policy or practice of the Village. Berryhill has not responded to the Village's argument and thus effectively concedes the point. For this reason, the Court grants the Village's motion for summary judgment.

Finally, Berryhill moves to strike Streamwood Fire Chief John Nixon. Defendants
6

propose to call Nixon to testify that the presence of fuel pumps and vapors at the gas station presented an inherently dangerous environment and that as a result, Berryhill's actions created a threat of great bodily harm.[2]

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identity of any person who will be used at trial to present opinion testimony within the scope of Federal Rules of Evidence 702, 703, or 705, and, "with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony," to provide a report disclosing the witness' opinions and the basis for them, the data the witness relied upon, the witness' qualifications, and certain other particulars. Fed. R. Civ. P. 26(a)(2)(A) & (B). Defendants argue that as an employee of the Village of Streamwood, Nixon was not "retained or specially employed" to give expert testimony in the case and thus that no report was required. That is a misreading of the Rule. Nixon might not have been "retained" in the sense of being paid, but he is without question "specially employed" to provide expert testimony in the case, as he had no involvement whatsoever in the events underlying the lawsuit. The commentary to Rule 26 makes it clear that the distinction between those witnesses as to whom a report is required and those as to whom no report is required turns on the witness' "involvement in the facts of the case." *Musser v. Gentiva Health Services*, 356 F.3d 751, 757 (7th Cir. 2003) (quoting commentary to Rule 26). Because Nixon's testimony in this case does not derive not from his involvement in the underlying events, his employment status with the Village did not insulate the defendants from the obligation to provide

---

[2] Defendants have not relied on Nixon's proposed testimony in any respect to support their motion for summary judgment.

a report under Rule 26(a)(2)(B).

"The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Musser*, 356 F.3d at 757. Defendants' misunderstanding of the requirements of Rule 26 – assuming that is what caused their non-compliance with the Rule – does not constitute a justification within the meaning of Rule 37(c)(1). *Id.* at 758. Defendants argue that their failure to provide a report is harmless because they were and are willing to produce Nixon for a deposition. But part of the purpose of Rule 26's requirement of a detailed report is to permit the opposing party to forego the time and expense of a deposition and instead rely on the report itself. As this Court has stated elsewhere:

> The 1993 amendment of Rule 26(a)(2)(B) to require the submission of expert reports was a significant change that the drafters hoped would reduce the need for expert depositions. The Advisory Committee noted that under the pre-1993 version of the rule, "[t]he information disclosed ... in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness." The Committee, which also amended Rule 26(b)(4)(A) to make it clear that an opposing party was entitled to depose a testifying expert, further stated that "[c]oncerns regarding the expense of such depositions should be mitigated by the fact that the expert's fees for the deposition will ordinarily be borne by the party taking the deposition. The requirement under subdivision (a)(2)(B) of a complete and detailed report of the expected testimony of certain forensic experts may, moreover, eliminate the need for some such depositions or at least reduce the length of the depositions." Fed. R. Civ. P. 26, 1993 Advisory Committee Notes.

*Collins v. Village of Woodridge*, No. 95 C 6097, 1999 WL 966455, at *3 (N.D. Ill. Oct. 19, 1999). Plaintiff was entitled to a report in conformity with the Rule and is not required to effectively bail out the defendants by taking Nixon's deposition and thereby rendering the violation harmless. Nor will the Court permit the late service of an expert report at this juncture and thereby overlook defendants' violation of the rule. The case is ready for trial, and a prompt

trial date is about to be set.[3] Were the Court to permit defendants to do now what they ought to have done by no later than March, plaintiff's counsel would be required to prepare for and take Nixon's deposition, consult with and perhaps retain an expert of their own, and tender that expert for deposition, all during the time they will be preparing for trial.

### Conclusion

For the reasons stated above, defendants' motion for summary judgment [docket # 34-1] is granted as to the claims against the Village of Streamwood but denied as to the claims against Daniel Spychalski. Plaintiff's motion to strike defendants' expert [docket # 28-1] is granted.

                                                                              _____
                                                                              MATTHEW F. KENNELLY
                                                                              United States District Judge

Date: June 28, 2004

---

[3] The case was recently transferred to this Court's docket from that of another judge who recused herself after she or a family member became involved in litigation in which counsel for Spychalski and the Village represented the opposing party. That judge had set the case for trial on January 4, 2005, but that trial date is no longer appropriate, as it involves a pooled trial call in which both this Court and the recused judge participate. The Court intends to advance the trial to a date in August or September of this year.